**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: THOMAS SKINNER,** : | |
| : | CIVIL ACTION |
| **Debtor** : | NO. 14-6697 |
| : | |
| : | BANKRUPTCY CASE |
| **WILLIAM SKINNER,** : | NO. 13-13318 |
| : | |
| **Appellant-Plaintiff,** : | ADVERSARY |
| **v.** : | NO. 13-405 |
| : | |
| **THOMAS SKINNER and ANNA SKINNER,** : | |
| : | |
| **Appellees-Defendants.** : | |

**MEMORANDUM**

Baylson, J.                                                                                                                                                          May 27, 2015

**I. Introduction**

Appellant-Plaintiff William Skinner appeals from the Bankruptcy Court's decision and order dismissing with prejudice his amended adversary complaint against his brother and sister-in-law, Appellee-Defendants Thomas and Anna Skinner.

In his amended adversary complaint, William Skinner alleges that Thomas Skinner embezzled the financial assets of their mother, Dorothy Skinner, leaving her unable to pay outstanding bills for assisted living care at Saint Joseph's Manor. Under the Pennsylvania Support Law, William and Thomas Skinner may be liable to pay for their mother's care. Saint Joseph's Manor has obtained a default judgment against Thomas Skinner under the Support Law, which he sought to discharge in bankruptcy. William Skinner, whose liability under the Support Law has not yet been adjudicated, alleges that to the extent he is required to pay for Dorothy Skinner's care at Saint Joseph's Manor, Thomas Skinner has a non-dischargeable obligation to

1

reimburse him because the debt to Saint Joseph's Manor was caused by Thomas Skinner's embezzlement and diversion of their mother's assets.

The Bankruptcy Court, Judge Magdeline Coleman, held that William Skinner failed to show that he has any cognizable claim against Thomas Skinner. Therefore, William Skinner was not a creditor of Thomas Skinner and lacked standing to challenge the dischargeability of Thomas Skinner's debts. For the reasons set forth below, the Bankruptcy Court's decision will be affirmed.

## II. Factual Background

The facts summarized here are as alleged in Appellant-Plaintiff William Skinner's Amended Adversary Complaint and its attachments. Adversary No. 13-405, ECF 23 (Bankr. E.D. Pa.) (hereinafter "Compl." or "Amended Complaint").

William Skinner and Thomas Skinner are brothers. Compl. ¶ 6. Their mother, Dorothy Skinner, is widowed. Compl. ¶ 6. Thomas Skinner is married to Anna Skinner. Compl. ¶ 8. In 2004, Thomas and Anna Skinner moved in with Dorothy Skinner at her condominium in Southampton, Pennsylvania. Compl. ¶ 8. In April 2005, Dorothy Skinner signed a Power of Attorney, giving Thomas Skinner authority over her account at Wachovia Bank. Compl. ¶ 13. As of early 2007, Dorothy Skinner had assets totaling about $400,000, which included her condominium, a brokerage account, a bank account, and a retirement account. Compl. ¶ 14. In addition, Dorothy Skinner received a monthly pension benefit and a social security benefit that total about $1,400 and a monthly long-term care insurance benefit. Compl. ¶ 15.

Beginning in about 2007, Thomas Skinner used his Power of Attorney to access Dorothy Skinner's assets to pay for his and his wife's personal expenses. Compl. ¶¶ 16-17. Thomas and Anna Skinner also convinced Dorothy Skinner to deed her property to them, and Thomas

Skinner took advances totaling about $35,000 from a line of credit with Wachovia Bank that Dorothy Skinner had secured with the property. Compl. ¶¶ 18-20.

In February 2009, Thomas and Anna Skinner placed Dorothy Skinner in an assisted living home at Saint Joseph's Manor. Compl. ¶ 21. While residing there, Dorothy Skinner received long-term care insurance payments that should have covered most or all of her expenses. Compl. ¶ 22. However, the long-term care payments were diverted by Thomas and Anna Skinner for their personal use and Dorothy Skinner was evicted from Saint Joseph's Manor for non-payment in June 2012, with an outstanding balance of $25,094.69 plus interest and fees. Compl. ¶¶ 23-26. As a result of Thomas and Anna Skinner's dissipation of her assets, Dorothy Skinner was unable to pay this outstanding balance. Compl. ¶ 30.

In late July or early August 2012, William Skinner filed a petition in the Orphans' Court of Bucks County, Pennsylvania, for appointment of a guardian over the estate and person of Dorothy Skinner. Compl. ¶ 31 & Ex. C (Doc. No. 23-3). On March 20, 2013, the Orphans' Court appointed a guardian. Compl. ¶ 32 & Ex. D. (Doc. No. 23-4). The Orphans' Court concluded that Dorothy Skinner "suffers from dementia and depressive disorder which has significantly impaired her executive functioning" and leaves her "vulnerable to exploitation, both financial and otherwise." Compl. Ex. D ¶¶ 24-25. The Orphans' Court further concluded that Thomas Skinner had mismanaged his mother's financial affairs, that Thomas Skinner facilitated the transfer of substantial sums of his mother's monies to himself and to other family members including William Skinner, and that neither Thomas Skinner nor William Skinner was an appropriate guardian for their mother. Compl. Ex. D ¶¶ 4, 7, 16-18, 20-21. The Orphans' Court also noted that Thomas and William Skinner blame each other for dissipating their mother's assets. Compl. Ex. D ¶ 8.

In September 2012, Saint Joseph's Manor filed a lawsuit in the Court of Common Pleas of Montgomery County, Pennsylvania, against Dorothy Skinner, William Skinner, and Thomas Skinner, seeking to recover the outstanding balance for Dorothy Skinner's care. Compl. ¶ 33 & Ex. E (Doc. No. 23-5). Saint Joseph's Manor contended that William and Thomas Skinner were liable to pay Dorothy Skinner's bills under a theory of unjust enrichment and under the Pennsylvania Support Law, 23 Pa. Cons. Stat. § 4601 et seq., which obligates children of an indigent person to pay for or contribute to the cost of the care for the indigent person. Compl. ¶¶ 33-34; Bankr. Ct. Memo. at 3, Adversary No. 13-405, ECF 30 (Bankr. E.D. Pa.). On February 15, 2013, a default judgment was entered in favor of Saint Joseph's Manor and against Thomas Skinner in the amount of $32,225.56. Bankr. Ct. Memo. at 3. As of May 2015, there was no judgment entered against William Skinner or Dorothy Skinner and the state court docket reflected no activity since September 2014. Docket for Holy Redeemer Health Systems v. Skinner, No. 2012-25014, available at http://webapp.montcopa.org/psi/v/search/case (last accessed May 14, 2015).[1]

## III. Procedural Background

Thomas Skinner filed a voluntary petition for Chapter 7 bankruptcy on April 16, 2013, two months after the default judgment was entered in favor of Saint Joseph's Manor. Bankr. No. 13-13318, ECF 1 (Bankr. E.D. Pa.). The case was converted to a Chapter 13 bankruptcy in July 2013, and then converted back to a Chapter 7 bankruptcy in February 2015. Id. ECF 34 & 88. The default judgment owed to Saint Joseph's Manor was the largest debt listed in Thomas Skinner's amended bankruptcy filings, although he also listed a property tax debt of

---

[1] In this appeal from the Bankruptcy Court, this Court "may take judicial notice of filings or developments [or the lack thereof] in related proceedings which take place after the judgment appealed from." Werner v. Werner, 267 F.3d 288, 295 (3d Cir. 2001).

4

approximately $11,600, and various consumer and credit card debts totaling about $7,000. Id. ECF 39 & 47.

William Skinner filed the adversary case giving rise to this appeal on July 19, 2013. Adversary No. 13-405, ECF 1 (Bankr. E.D. Pa.). His initial complaint was dismissed without prejudice on December 19, 2013. Id. ECF 21. He filed an Amended Complaint on January 2, 2014. Id. ECF 23. The Amended Complaint set forth four counts.

Count One sought a declaratory judgment that William Skinner's claims against Thomas Skinner are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) because the debt arose from embezzlement or larceny. Id. ECF 23 ¶¶ 44-50.

Count Two sought a declaratory judgment that William Skinner's claims against Thomas Skinner are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) because the debt arose from a willful and malicious injury. Id. ECF 23 ¶¶ 51-57.

Count Three asserted that Thomas and Anna Skinner misappropriated the funds of Dorothy Skinner in violation of the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5101 et seq., and sought various forms of relief. Id. ECF 23 ¶¶ 58-61:9.

Finally, Count Four alleged a claim for contribution, restitution, and recoverable damages against Thomas and Anna Skinner pursuant to Section 914 of the Restatement (Second) of Torts. Id. ECF 23 ¶¶ 62-66:4.

Thomas and Anna Skinner moved to dismiss the Amended Complaint on January 27, 2014. Id. ECF 25. William Skinner filed his Response in Opposition on March 3, 2014. Id. ECF 27. In a Memorandum Decision filed October 8, 2014, Bankruptcy Judge Magdeline D. Coleman granted the motion to dismiss and concluded that William Skinner was not a creditor of Thomas

Skinner and therefore lacked standing to pursue his non-dischargeability claims. Id. ECF 30. William Skinner filed a timely notice of appeal on October 21, 2014. Id. ECF 34.

In this Court, Appellant-Plaintiff William Skinner filed his opening brief on December 11, 2014. ECF 3. Appellee-Defendants Thomas and Anna Skinner filed their brief on December 26, 2014. ECF 4. At the request of the Court, William Skinner filed a reply brief on February 28, 2015. ECF 5.

**IV.     Jurisdiction and Standard of Review**

This Court has jurisdiction over appeals from final judgments, orders and decrees of the Bankruptcy Courts under 28 U.S.C. § 158(a)(1). This appeal is from an order dismissing William Skinner's amended adversary complaint with prejudice, and is a final order.

This Court reviews "the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998).

**V.     Discussion**

At its core, William Skinner's complaint seeks to assert claims and arguments that belong to Dorothy Skinner and Saint Joseph's Manor. As a result, the Bankruptcy Court correctly concluded that William Skinner lacks standing to challenge the dischargeability of Thomas Skinner's debts because William Skinner has not alleged that he has a cognizable claim against Thomas or Anna Skinner under non-bankruptcy statutory or common law. Therefore, William Skinner is not a creditor of Thomas Skinner and is not entitled to file a non-dischargeability action.

As discussed below, the Court will affirm the Bankruptcy Court's decision on all issues, although on different grounds with respect to Count Three.

1. <u>Counts One and Two Regarding Non-Dischargeability Fail to State a Claim Because William Skinner Is Not a Creditor of Thomas Skinner</u>

Counts One and Two of William Skinner's Amended Complaint each seek a declaratory judgment that William Skinner's claims against Thomas Skinner are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6). However, a debt of the kind specified in these subsections is dischargeable unless, "on request of the creditor to whom such debt is owed," the court determines the debt is non-dischargeable. 11 U.S.C. § 523(c)(1); <u>see also</u> Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."). In short, "only a party to whom a debt is owed under the Bankruptcy Code has standing to challenge the dischargeability of that debt." <u>In re Jarmul</u>, 150 B.R. 134, 138-39 (Bankr. W.D. Pa. 1993). To enforce that limitation, "every dischargeability proceeding" must first consider whether "the creditor hold[s] an enforceable obligation under non-bankruptcy law" because "[i]n the absence of an enforceable obligation, there is no 'debt' that can be non-dischargeable." <u>In re August</u>, 448 B.R. 331, 346 (Bankr. E.D. Pa. 2011) (quoting <u>In re Roland</u>, 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003)).

Counts One and Two of William Skinner's Amended Complaint do not identify the basis for William Skinner's claim against Thomas Skinner and instead allege vaguely that "William Skinner has claims against the defendant, Thomas Skinner, to the extent that the plaintiff, William Skinner, is liable under [the] Pennsylvania Support Law." Compl. ¶¶ 49, 56. As discussed below, the Pennsylvania Support Law does not give William Skinner a claim against Thomas Skinner. Court Three of the Amended Complaint alleges a claim against Thomas and Anna Skinner under the Pennsylvania Uniform Fraudulent Transfer Act (UFTA). Compl. ¶¶ 58-61:9. In addition, Count Four of the Amended Complaint alleges a claim for "contribution,

7

restitution, and recoverable damages" under Section 914 of the Restatement (Second) of Torts. Compl. ¶¶ 62-66:4.

If any part of the Amended Complaint, particularly Counts Three or Four, stated a viable claim, William Skinner would be a creditor of Thomas Skinner and would have standing to bring Counts One and Two regarding the dischargeability of any debts owed to him. However, as discussed below, the Amended Complaint does not adequately allege that William Skinner has a cognizable claim against Thomas or Anna Skinner under the Support Law, a tort theory, or the UFTA.

    2.    <u>The Pennsylvania Support Law Does Not Give William Skinner a Cause of Action Against Thomas Skinner</u>

William Skinner does not argue that the Support Law gives him a claim against Thomas or Anna Skinner. Appellant's Br. 20; Reply Br. 4. Nevertheless, a brief overview of the Support Law provides useful context for this case.

Pennsylvania first imposed a filial support law in 1771, requiring children to support their indigent parents if the children are of sufficient financial ability. <u>Albert Einstein Med. Ctr. v. Forman</u>, 243 A.2d 181, 183 (Pa. Super. 1968). Similar legislation was enacted in 1803, 1836, 1857, 1915, and 1937. <u>Id.</u> Most recently, in 2005 the Support Law was amended and recodified to its present form. 2005 Pa. Legis. Serv. Act 2005-43 (S.B. 86) <u>codified at</u> 23 Pa. Cons. Stat. Ann. §§ 4601 <u>et seq</u>.

In relevant part, the Support Law assigns "the responsibility to care for and maintain or financially assist an indigent person" to any spouse, child, or parent of the indigent person. 23 Pa. Cons. Stat. Ann. § 4603(a)(1). Indigence is not defined in the statute, but Pennsylvania courts have interpreted it broadly to include persons "who have some limited means, but whose means are not sufficient to adequately provide for their maintenance and support," in addition to those

8

who are "completely destitute and helpless." Health Care & Ret. Corp. of Am. v. Pittas, 46 A.3d 719, 724 (Pa. Super. 2012) (quoting Savoy v. Savoy, 641 A.2d 596, 599-600 (Pa. Super. 1994)).

The amount of liability under the Support Law is set by the courts. 23 Pa. Cons. Stat. Ann. § 4603(b). As early as 1884, the Pennsylvania Supreme Court held that if the children of an indigent person "are of such unequal ability, that some should justly pay more than others, then the [court's] decree should equitably apportion the gross sum among them, and specify the amount to be paid by each." Appeal of O'Connor, 104 Pa. 437, 439 (1884). Children with the means to support an indigent parent can be ordered to provide support even when another child was specifically designated to care for the indigent parent. Com. v. Hecker, 82 Pa. Super. 123, 124-25 (1923) (affirming order requiring two sons who had shared in the distribution of their mother's property to contribute to their mother's support even though their sister, who had received a larger share of the mother's property, had been designated to care for the mother).

Notably, the Support Law does not provide for contribution or reimbursement. Interpreting the current version of the Support Law, the Pennsylvania Superior Court has held that a single child can be found liable under the Support Law without consideration of whether the indigent person's spouse or other children were also liable and able to assist. Pittas, 46 A.3d at 723. If a child "desire[s] to share his support-burden, he [i]s permitted to do so by joining those individuals in [the] case [against him]." Id.

Any person with "any interest in the care, maintenance or assistance" of an indigent person may petition the appropriate state court for an order of support. 23 Pa. Cons. Stat. Ann. § 4603(c)(2). Pennsylvania courts have long allowed medical providers to sue children under the Support Law to seek reimbursement of past medical expenses incurred by an indigent parent. Forman, 243 A.2d at 184 (affirming judgment under the Support Law requiring children to pay

9

the unpaid hospital bills of their mother); Pittas, 46 A.3d at 720-24 (affirming verdict requiring son to pay $92,943.41 for indigent mother's nursing care and treatment).

The Support Law also has been used by medical providers to seek payment from the child of an indigent patient after the child allegedly used a power of attorney to transfer the parent's financial resources to him or herself. Presbyterian Med. Ctr. v. Budd, 832 A.2d 1066, 1075-77 (Pa. Super. 2003). In Budd, the Pennsylvania Superior Court reversed a lower court's order of dismissal and remanded for further proceedings because the plaintiff medical center had stated a valid cause of action under the Support Law against a daughter who had acted as her mother's attorney-in-fact and allegedly transferred her mother's assets to herself. Id.

Commentators have noted that enforcement of the plain language of Pennsylvania's Support Law "can have harsh results," and have called for its amendment or repeal. Katherine C. Pearson, Filial Support Laws in the Modern Era: Domestic and International Comparison of Enforcement Practices for Laws Requiring Adult Children to Support Indigent Parents, 20 Elder L.J. 269, 294, 298 (2013) (noting that the Pennsylvania Bar Association has called for its repeal); Jared M. DeBona, Mom, Dad, Here's Your Allowance: The Impending Reemergence of Pennsylvania's Filial Support Statute and an Appeal for Its Amendment, 86 Temp. L. Rev. 849, 874-80 (2014) (proposing changes to the Pennsylvania Support Law). There is presently a bill pending in the Pennsylvania General Assembly that would repeal the Support Law's provisions regarding relatives' liability, 2015 Pa. H.B. No. 242, but, for now, the law remains in effect.

In this case, to the extent that Dorothy Skinner is unable to pay her past medical expenses, the Support Law gives Saint Joseph's Manor a cause of action against her children, William and Thomas Skinner. The Support Law does not give William Skinner any right of contribution or restitution from Thomas Skinner or Dorothy Skinner, and leaves it to the Court of

Common Pleas to determine how much support, if any, each of the brothers must pay for their mother.

### 3. Count Three Fails to State a Viable UFTA Claim Against Thomas Skinner

Because the Support Law does not provide William Skinner with a claim against Thomas Skinner, the question is whether the Amended Complaint alleges any other valid claim that would make William Skinner a creditor of Thomas Skinner. To fill this gap, William Skinner relies on Count Three, alleging a Pennsylvania Uniform Fraudulent Transfer Act (UFTA) claim, and Count Four, alleging a tort claim.

In Count Three of his Amended Complaint, William Skinner alleges a claim against Thomas and Anna Skinner under the Pennsylvania UFTA, 12 Pa. Cons. Stat. Ann. § 5101 et seq. Compl. ¶¶ 58-61:9. Importantly, William Skinner alleges that the fraudulent transfers at issue were Thomas Skinner's transfers of Dorothy Skinner's funds and assets to himself and Anna Skinner, not transfers of Thomas and Anna Skinner's assets to some other party. Compl. ¶¶ 58-61; Appellant's Br. 21. As such, the Court views Count Three as an attempt to show that William Skinner is a creditor of Thomas Skinner because William Skinner has a claim under the UFTA for Thomas Skinner's actions while acting as the attorney-in-fact of Dorothy Skinner.[2]

There are two reasons why Count Three does not state a viable claim and does not establish that William Skinner is a creditor of Thomas Skinner. First, in Budd, the Pennsylvania Superior Court considered whether a medical provider could bring a UFTA claim against the daughter of an indigent patient who had allegedly used her power of attorney to transfer her

---

[2] In this regard, the Bankruptcy Court's discussion of Count Three, while accurate as a matter of bankruptcy law, appears to have been inapposite. The Bankruptcy Court discussed the requirements for asserting a UFTA claim regarding a fraudulent transfer of the bankruptcy debtor's (Thomas Skinner's) assets, rather than focusing on whether William Skinner has a claim against Thomas Skinner under the UFTA for Thomas Skinner's actions as Dorothy Skinner's attorney-in-fact. Under either analysis, Count Three fails to state a claim.

11

mother's assets to herself. 832 A.2d at 1073-74. The court concluded that "[t]his Commonwealth has not recognized a UFTA claim targeting the attorney-in-fact of a debtor," which would require the novel conclusion that "an attorney-in-fact of a [UFTA] debtor is liable on the debtor's claim to a [UFTA] creditor." Id. at 1074. Although an Ohio court had recognized such a claim under a similar law, the Superior Court "decline[d] to decide as a general matter whether this Commonwealth's definition of 'debtor' under the UFTA includes the attorney-in-fact of a debtor." Id. Nevertheless, the court held that the plaintiff medical center had not pled sufficient facts to show that the attorney-in-fact daughter of the indigent debtor qualified as a "debtor" for purposes of the UFTA. Id. Accordingly, the Superior Court concluded that the trial court had properly dismissed the medical center's UFTA claim against the daughter. Id. The Superior Court further commented that the daughter's "liability to [the] Mother's estate for any improper or fraudulent transfers [wa]s an issue properly raised in Orphan's Court during an accounting of [the] Mother's estate." Id.

Although Budd did not categorically rule out a UFTA claim against the attorney-in-fact of a UFTA debtor, the facts in Budd appear to be indistinguishable from this case. The holding in Budd indicates that no party here, not even Saint Joseph's Manor, has a cognizable UFTA claim against Thomas Skinner for his alleged expropriation of Dorothy Skinner's assets while he was Dorothy Skinner's attorney-in-fact. As such, the UFTA does not give William Skinner a claim against Thomas Skinner.

Second, even if Pennsylvania law allowed a UFTA claim against the attorney-in-fact of a UFTA debtor, remedies under the UTFA are only available to "creditors" or those standing in their stead. 12 Pa. Cons. Stat. Ann. § 5107(a); Hecht v. Malvern Preparatory Sch., 716 F. Supp. 2d 395, 402 (E.D. Pa. 2010) (holding that a receiver acting on behalf of defrauded investors had

standing to pursue a UFTA claim). UFTA "creditors" may only obtain relief against the UFTA "debtor" and any "transferees" who received the "debtor's" property. 12 Pa. Cons. Stat. Ann. § 5107(a). For purposes of William Skinner's UFTA claim, the UFTA "debtor" is Dorothy Skinner or, possibly, Thomas Skinner as the attorney-in-fact controlling the assets of Dorothy Skinner. The UFTA "transferees" are Thomas and Anna Skinner. As discussed throughout this opinion, the Amended Complaint does not identify any non-UFTA claim that William Skinner holds against Thomas or Anna Skinner. It also does not allege that William Skinner holds any claim against Dorothy Skinner. As such, William Skinner is not a "creditor" for purposes of the UFTA because he does not have a claim against Dorothy Skinner or against her assets that were controlled by Thomas Skinner. William Skinner therefore lacks standing to pursue a UFTA claim regarding Thomas Skinner's transfers of Dorothy Skinner's assets to himself.

Because Count Three does not allege a viable UFTA claim, it does not establish that William Skinner is a bankruptcy creditor of Thomas Skinner or that he is entitled to bring a non-dischargeability action.

  4. <u>The Restatement (Second) of Torts § 914 Provides For Damages, Not An Independent Cause of Action</u>

Finally, Count Four alleges a claim for "contribution, restitution and recoverable damages" against Thomas and Anna Skinner under Section 914 of the Restatement (Second) of Torts. Compl. ¶¶ 62-66:4. Section 914 of the Restatement (Second) falls within Division Thirteen: Remedies and Chapter 47: Damages. It reads in full:

> (1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.
>
> (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

13

Restatement (Second) of Torts § 914 (1979). Thus, on its face, Section 914 discusses damages available as a remedy in a tort action and, in subsection 2, sets out an exception to the typical "American Rule" that each party bears its own costs and attorney's fees. Section 914 does not purport to establish an independent cause of action.

Cases applying Pennsylvania law confirm the common-sense interpretation that Section 914 describes a measure of damages available to compensate a tort plaintiff who brings a cause of action based on fraud, indemnification, or the breach of another duty owed to the plaintiff. Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 117 (3d Cir. 1992) (claim for indemnification); Seaboard Sur. Co. v. Permacrete Const. Corp., 221 F.2d 366, 368, 372 (3d Cir. 1955) (claim for fraud); Barry-Wehmiller Design Grp., Inc. v. Storcon Sys., Inc., No. 14-cv-1074, 2014 WL 4852831, at *2 (M.D. Pa. Sept. 24, 2014) (claim for indemnification); De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp., No. 06-cv-2319, 2009 WL 678625, at *2 & n.2 (E.D. Pa. Mar. 16, 2009) (claim for fraud); In re Pennsylvania Footwear Corp., 204 B.R. 165, 169, 180-81 (Bankr. E.D. Pa. 1997) (claim for breach of a forbearance agreement); In re Eisele, 132 B.R. 696, 699, 703 (W.D. Pa. 1991) (claim for intentional and improper interference with contracts); Treco, Inc. v. Wolf Investments, No. 1765, 2001 WL 1807762, at *4 (Pa. Com. Pl. Feb. 15, 2001) (claim for indemnification); see also Corace v. Balint, 210 A.2d 882, 888 (Pa. 1965) (noting that the proper operation of Section 914 was demonstrated in Seaboard, 221 F.2d 366). In the context of a fraud claim, Judge McLaughlin of this District has explicitly noted that Section 914(2) permits "attorneys' fees as a measure of fraud damages." De Lage Landen Fin. Servs., 2009 WL 678625, at *2 n.2.

Most of the cases cited by William Skinner interpret the law of other jurisdictions but similarly confirm that Section 914 describes a measure of damages available to a plaintiff who

prevails on a typical, cognizable tort claim, such as for fraud or negligence. Scottsdale Ins. Co. v. Am. Re-Ins. Co., No. 06-cv-16, 2008 WL 2001750, at *10-11 (D. Neb. May 6, 2008) (discussing litigation costs as damages in a claim for fraud); Whitelaw v. Brooks, 138 S.W.3d 890, 892-94 (Tenn. Ct. App. 2003) (attorneys' fees as damages for surveyor negligence); Collins v. First Fin. Servs., Inc., 815 P.2d 411, 412-13 (Ariz. Ct. App. 1991) (attorneys' fees recoverable as damages for conversion); Olson v. Fraase, 421 N.W.2d 820, 829 (N.D. 1988) (discussing attorney's fees as an item of special damages in a legal malpractice action); Shindler v. Lamb, 211 N.Y.S.2d 762, 764-65 (Sup. Ct. 1959) (litigation costs and attorneys' fees as damages for fraud and conspiracy to defraud).

The only cases cited by William Skinner that support his contention that Section 914 allows for an independent cause of action are cases applying Tennessee law. In Pullman Standard, Inc. v. Abex Corp., the Tennessee Supreme Court held that a plaintiff could recover attorneys' fees and litigation expenses under an "independent tort theory" based on a tort of deceit that was committed against other parties. 693 S.W.2d 336, 339-40 (Tenn. 1985). In Pullman Standard, the plaintiff Pullman had manufactured a railcar for the Louisville and Nashville Railroad Company. Id. at 337, 340. The railcar caused a derailment, allegedly because one of its wheels was defective. Id. After defending litigation related to the derailment, Pullman sued the manufacturer of the wheel, alleging that the manufacturer had deliberately deceived the Louisville and Nashville Railroad Company and the Association of American Railroads regarding the safety of its wheel, which caused the wheel to be retained in service and resulted in the derailment. Id. The Tennessee Supreme Court held that these allegations were sufficient to state a claim for recovery of Pullman's attorneys' fees and litigation expenses. Id. at 340.

William Skinner has not cited, and the Court has not found, any cases suggesting that Pennsylvania courts would recognize the type of claim permitted in Pullman Standard. There appears to be no precedent in Pennsylvania law for a plaintiff to recover based solely on allegations that a defendant committed a tort against a third-party, which later resulted in the plaintiff incurring litigation expenses. Instead, the Pennsylvania cases all support the Bankruptcy Court's conclusion that Section 914 describes a measure of damages available to a tort plaintiff who was himself the victim of the defendant's tortious conduct.

To put it another way, William Skinner has alleged damages, but he has not alleged other essential prerequisites for a tort claim. For example, he has not alleged any duty that Thomas Skinner owed to him, as opposed to a duty owed to Dorothy Skinner or to Saint Joseph's Manor. Likewise, William Skinner has not alleged how Thomas Skinner breached a duty that was owed to him.[3] As a result, Count Four of William Skinner's complaint fails to state a cognizable tort claim against Thomas Skinner under Pennsylvania law and does not establish that William Skinner is a bankruptcy creditor of Thomas Skinner.

## VI.  Conclusion

For all of the foregoing reasons, William Skinner has not adequately alleged that he is a bankruptcy creditor of Thomas Skinner. He therefore lacks standing to bring an action challenging the dischargeability of Thomas Skinner's debts. The Bankruptcy Court correctly concluded that William Skinner's Amended Complaint failed to state a claim upon which relief

---

[3] The Court offers no opinion regarding whether William Skinner could state a viable tort claim against Thomas Skinner. In this appeal, the only question is whether the Amended Complaint stated a viable claim, which it did not. The Court will not undertake an open-ended review of Pennsylvania tort law in search of a cognizable cause of action that was not alleged in the Amended Complaint.

16

could be granted and properly dismissed the complaint with prejudice. The Bankruptcy Court's decision will be affirmed.

An appropriate order follows.

O:\CIVIL 14\14-6697 skinner v. skinner\14cv6697.DispositiveMemo.2015.05.22.docx